FILED

2012 May-07  PM 02:09
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ANGELA T. BARBEE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **5:11-cv-1304-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Angela T. Barbee ("Barbee") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This Court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Barbee filed her application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Insurance on January 25, 2008, alleging a

disability onset date of November 29, 2007, from "degenerative disc disease." (R. 129). After the SSA denied her application on April 22, 2008, (R. 82), Barbee requested and received a hearing on October 19, 2009, (R. 33-79, 93). At the time of the hearing, Barbee was 42 years old with a high school diploma and two years of college. (R. 81, 133). Barbee has not engaged in substantial gainful activity since November 29, 2007. (R. 129). Her past relevant work included work as a store clerk/stocker and physical therapy aide. (R. 23).

On January 8, 2010, the ALJ denied Barbee's claims. (R. 10-24). The ALJ found that Barbee has degenerative disc disease of the lumbar spine status post anterior lumbar decompression, fusion at L5-S1, and a history of morbid obesity, (R. 15), that Barbee cannot perform any past relevant work, but that she has a residual functional capacity ("RFC") to perform light work. (R. 18, 22). On February 28, 2011, the Appeals Council refused to grant review. (R. 1-5). Barbee then filed this action for judicial review pursuant to 42 U.S.C. § 405(g). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g)

and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)   whether the claimant is currently unemployed;

(2)   whether the claimant has a severe impairment;

(3)   whether the impairment meets or equals one listed by the Secretary;

(4)   whether the claimant is unable to perform his or her past work; and

(5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can

do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, Barbee alleges disability because of pain, she must meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  *See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.  Therefore, if

a claimant testifies to disabling pain and satisfies the three part pain standard, the

ALJ must find her disabled unless the ALJ properly discredits her testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the

ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for
> refusing to credit a claimant's subjective pain testimony, then the [ALJ], as
> a matter of law, has accepted that testimony as true.  Implicit in this rule is
> the requirement that such articulation of reasons by the [ALJ] be supported
> by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either

fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if

the ALJ's reasons are not supported by substantial evidence, the court must accept

as true the pain testimony of the plaintiff and render a finding of disability.  *Id*.

## IV.  The ALJ's Decision

As a threshold matter, the court notes that the ALJ properly applied the five

step analysis.  Initially, the ALJ determined that Barbee had not engaged in

substantial gainful activity since November 29, 2007, and therefore met Step One.

(R. 15).  The ALJ acknowledged that Barbee's combination of severe impairments

of degenerative disc disease of the lumbar spine status post anterior lumbar

decompression, fusion at L5-S, and obesity met Step Two.  *Id*.  The ALJ

proceeded to the next step and found that Barbee did not satisfy Step Three since

her impairments or combination of impairments neither met nor equaled the

requirements for any listed impairment.  (R. 18).  Although she answered Step

Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the

ALJ proceeded to Step Four where she determined that Barbee had the RFC to

> perform light work . . . except [Barbee] is only able to carry ten
> pounds frequently and twenty pounds occasionally.  She can stand
> and walk for about four hours out of an eight hour workday with a
> sit/stand option at the work place.  [Barbee] can occasionally balance,
> stoop, crouch and crawl.

(R. 18).  Further, the ALJ held that Barbee could not perform any of her past

relevant work.  (R. 22-23).  Lastly, in Step Five, the ALJ considered Barbee's age,

education, work experience, RFC, and impairments, and determined that there are

a significant number of jobs in the national economy that Barbee can perform.  (R.

23).  Specifically, Barbee can perform parking garage attendant, production

inspector, hand packer, information clerk, order clerk, and garment folder.  (R. 23-

24).  Because the ALJ answered Step Five in the negative, the ALJ determined

that Barbee is not disabled.  (R. 23); *see also McDaniel*, 800 F.2d at 1030.

## V.  Analysis

As it relates to the pain standard, the ALJ found that Barbee's "medically

determinable impairments could reasonably be expected to cause the alleged

symptoms; however, [Barbee's] statements concerning the intensity, persistence

and limiting effects of these symptoms are not credible to the extent they are

inconsistent with the above [RFC] assessment."  (R. 19).  It is this finding that

Barbee challenges.  Barbee contends she meets the three-part pain standard, and

that "not only did the ALJ fail to properly consider her pain within the framework

of the pain standard as set out by the Eleventh Circuit, but the ALJ did not

properly consider her pain within Social Security's own Ruling SSR 96-7p . . . ."[2]

Doc. 6 at 12.  The court has reviewed the entire record and Barbee's contentions

and, for the reasons discussed below, finds that the ALJ properly applied the pain

standard and that her decision is supported by substantial evidence.

A.     *The ALJ considered the entire record and properly applied the three-part pain standard.*

As a threshold matter, the court notes that subjective complaints of pain

alone are insufficient to prove disability.  *See* 20 C.F.R. § 416.929(a); *see also*

*Holt*, 921 F.2d at 1223.  Rather the pain standard requires (1) evidence of an

_____

[2] Barbee asserts that the ALJ failed to consider her subjective complaints within the framework of the Eleventh Circuit's pain standard and Social Security Ruling SSR 96-7p; however, Barbee failed to rebut the ALJ's findings with evidence in the record.  *See* Doc. 6. Similar to the Eleventh Circuit pain's standard,

> [SSR 96-7p] require[s] the Commissioner to evaluate subjective complaints of pain in light of the objective medical evidence, the claimant's own statements, and other evidence in the record, and to offer specific reasons for discrediting a claimant's subjective complaints.

*Hoffman v. Astrue,* 259 F. App'x 213, 219 (11th Cir. 2007) (citing SSR 96-7p).  Thus, because the Eleventh Circuit applies the SSR-96-7p analysis in its pain standard, this court will only address the pain standard. *See Mack v. Comm'r of Soc. Sec. Admin*, 420 F. App'x 881, 883 (11th Cir. 2011); Mason v. *Comm'r of Soc. Sec. Admin*, 430 F. App'x 830, 834 (11th Cir. 2011).

underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Id*. Turning now to the facts here, in support of her contention that she suffers from disabling pain, Barbee alleged that due to her shoulder and back pain she has to lay down six hours a day, (R. 59), can only sit for thirty minutes, stand for fifteen minutes, cannot walk a city block, can only lift a gallon of milk, has a hard time getting up and down stairs, (R. 62-64), and cannot lift her right arm above her shoulder without pain, (R. 57). Additionally, Barbee contends that she has had shoulder pain daily since September 2007 and back pain daily since November 2007. (R. 55). Unfortunately for Barbee, a review of the medical evidence shows that the ALJ concluded correctly that the evidence does not support Barbee's contentions about the severity of her shoulder and back pain.

### 1.    *Shoulder Pain*

As it relates to the shoulder pain, in September 2007, prior to the alleged onset date, Barbee had surgical arthroscopy of her right shoulder, subcrominal decompression, debridement of type I SLAP, debridement of undersurface cuff tear, and open mumford. (R. 190). In her decision, the ALJ recognized that

Barbee has "a history of right shoulder pain status post subacromial decompression." (R. 19). However, the ALJ found that the medical evidence "reveals [Barbee] did well in physical therapy with good strengths and good ranges of motion as of November 27, 2007" and, that Barbee's pain is not disabling. *Id*. This finding is supported by substantial evidence.

Based on the medical record, on October 11, 2007, two weeks after her surgery, Barbee was "feeling well" and participated in therapy. (R. 273). Additionally, she had "good passive range of motion" of her right shoulder and felt "strong doing things below the level of the shoulder." *Id.* On October 16, 2007, during Barbee's three week follow up, Dr. Hugh Shields assessed Barbee's shoulder as "pain better – tolerated well." (R. 201). A month later, on November 15, 2007, Barbee told her physical therapist that her shoulder "feels good. Only a little sore." (R. 306). By her last physical therapy session on November 27, 2007, Barbee relayed that her shoulder "feels good." (R. 305). Significantly, the physical therapy records on Barbee's last session showed that Barbee had shoulder range of motion that was within normal limits and had met the goals of her physical therapy. (R. 305).

In light of the obvious success of the surgery and physical therapy, to no surprise, Barbee did not seek any additional treatment from her orthopedic

surgeons after November 2007.  (R. 272).  Moreover, when Barbee visited Dr.

Will Crouch on March 28, 2008, for a consultative exam, Barbee failed to

complain about any pain in her right shoulder and claimed only that she could not

return to work due to the constant pain in her *lower back* and *both hips*.  (R. 227).

The final medical evidence occurred on February 5, 2009, during which Dr.

Calame Sammons noted that Barbee had "full range of motion of the upper and

lower extremities."  (R. 387).

Despite this record that shows no ongoing shoulder issues after November

2007, nonetheless, at the hearing, Barbee alleged disabling pain and limited

weight restrictions due to her shoulder:

> Q.   I don't want you to do this, but can you lift your arm above your
>      shoulder?
>
> A.   I can, but it hurts.
>      . . .
> Q.   A half a gallon weighs four pounds.  A gallon weighs about eight.
>      How much can you comfortable lift?
>
> A.   I can get a gallon of milk with my good, my left arm if I hold it next
>      to me.
>      . . .
> Q.   Do you think you could lift any more than that comfortably?
>
> A.   No.

(R. 57, 65).  However, this testimony is belied by Barbee's failure to allege any

shoulder pain to her treating physicians over the course of fifteen months, i.e.,

November 2007 to February 2009.  Thus, the court agrees with the ALJ that

Barbee's "subjective complaints of right shoulder pain and limited ranges of

motion, as alleged at the hearing, are not supported by the objective medical

evidence received into the record."  (R. 20).

###   2.   *Back Pain*

In terms of Barbee's alleged disability due to back pain, the ALJ determined

that "the medical evidence of the record reveals that [Barbee] has a history of

degenerative disc disease confirmed by diagnostic scans."  *Id*.  However, the ALJ

contends that the "findings of disc disease and/or osteoarthritis" is mild and not

disabling.  *Id*.  This finding is also supported by substantial evidence.  A review of

the medical evidence shows that during her consultative examination with Dr.

Crouch, on March 28, 2008,  Barbee alleged that the pain in her lower back and

both hips was getting worse.  (R. 227).  Dr. Crouch noted that Barbee changed

positions several times during his examination, and appeared uncomfortable while

sitting on the examination table, and that Barbee had tenderness over the lower

lumbar paraspinous muscles.  (R. 228).  However, Dr. Crouch noted that Barbee

could walk without an assistive device, got on and off the exam table without

assistance, could do heel and toe walk without difficulty, and could squat and rise

without assistance.  *Id*.  There is simply nothing in Dr. Crouch's exam to refute the

ALJ's findings.

Next, in April of 2008, Barbee had a lumbar MRI that revealed a "mild

diffuse degenerative disk disease, no bulging disk." (Doc. 241).  On May 9,

2008, Dr. Ralph Lyerly performed a lumbar epidural steroid injection and lumbar

puncture, at the request of Barbee's primary physician, Dr. Hugh O'Shields.  *Id*.

Dr. O'Shields also referred Barbee to Dr. Mark N. Hadley, who, on June 23, 2008,

found no developing weakness in Barbee's legs, but found some neuropathy in her

lower extremities.  (R. 268).  Significantly, Dr. Hadley noted that Barbee is not

using her anti-inflammatory medications to any degree, and is not involved in a

regular exercise and conditioning program, a stretching paradigm, or flexibility

maintenance program.  *Id*.

The next medical visit occurred seven months later when, on February 5,

2009, Dr. Hughes referred Barbee to Dr. Sammons for a consultation.  (R. 386).

Dr. Sammons noted that Barbee reported that her back pain had progressively

worsened since 2007, *id*, and diagnosed Barbee with severe degenerative disc

disease with discogenic back pain and facet arthropathy. (R. 387).  Dr. Sammons

recommended an interbody fusion and relayed to Barbee that the procedure would

restrict her from any "repetitive bending or twisting for at least four months and

would have to be restricted on her amount of weightlifting." *Id.*  Despite her

contention of disabling pain,  Barbee stated that she "helps her husband with a

chicken farm and she would have to see how [the procedure] could be worked

out." *Id.*

Barbee eventually allowed Dr. Perry Savage to perform the procedure in

March 2009, (R. 389), and by May 11, 2009, Dr. Savage noted that "[Barbee's]

pain is better since her surgery. [Her] [w]ound looks good." (R. 438).  On the

June 22, 2009, follow-up visit, Dr. Savage noted that Barbee still continued to

have pain and limitations of motion of the lumbar spine, but that the fusion

appeared to be healing, that Barbee had good alignment of the lumbar spine, and

good hip motions.  (R. 439).  Finally, Dr. Savage noted that Barbee "needed to

give [the healing process] some time." *Id.*

Barbie visited Dr. Savage next on August 3, 2009, during which she stated

that her L-spine was a little stiff and that she had generalized tenderness across the

lumbar area.  (R. 441).  However, Dr. Savage noted that Barbee's condition "ha[d]

improved," that she had good alignment of the lumbar spine, normal sensory,

could heel and toe walk, and had good hip motion.  *Id.*  Dr. Savage stated again

that Barbee needed to give the healing process some time, and that she needed to

walk routinely for exercise.  *Id.* Also, Dr. Savage prescribed Barbee medication to

help alleviate the pain.  *Id.*  This is the final medical entry in the record that relates to Barbee's contention of disabling pain.

After reviewing the entire record, the ALJ acknowledged that Barbee's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but found that Barbee's statements concerning the "intensity, persistence and limiting effects of these symptoms" are not consistent with the evidence in the record.  (R. 19).  In other words, the ALJ did not reject Barbee's statements as to the intensity and persistence of her symptoms solely because they are not substantiated by objective medical evidence.  Instead, "the ALJ considered all the evidence presented, including [Barbee's] statements and medical statements by [her] treating and consulting physicians."  *May v. Comm'r of Soc. Sec. Admin*, 226 F. App'x 955, 959 (11th Cir. 2007) (internal citations omitted).

The ALJ's decision is supported by substantial evidence for several reasons. First, the court notes that, initially, Barbee expressed apprehension about having the interbody fusion because she helped her husband on the chicken farm.  The fact that Barbee helped on a chicken farm, even if only for ten minutes a day, (R. 67), and showed some reluctance to a procedure that could alleviate her alleged disabling back pain, supports the ALJ's contention that Barbee's back pain is not as severe as she alleges.  Second, despite Barbee's report of pain to Dr. Crouch,

the consultative physician, the evidence shows that, in March 2008, Barbee could walk without an assistive device, got on and off an exam table without assistance, heel and toe walked without difficulty, and did squats without any assistance.  (R. 228).  Third, Barbee filed her disability claim in January 2008 and had her surgery in March 2009.  Since the surgery, Barbee's fusion is healing properly, she has good alignment of the lumbar spine, good hip motion, and her condition has improved overall.  (R. 441, 439).  Finally, none of the doctors who treated Barbee opined that she is unable to engage in any work activity.  Based on this evidence, all of which the ALJ had when she held the hearing in October 2009, the ALJ properly applied the pain standard when she determined that Barbee would have some problems in her ability to perform repetitive lifting and carrying of heavy objects and, as a result, limited Barbee to light work with a sit/stand option.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Barbee is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  The final decision of the Commissioner is, therefore, **AFFIRMED**.  A separate order in accordance with this memorandum of decision will be entered.

**Done** the 7th day of May, 2012.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE